IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | }<br>}<br>}<br>} |
| *Plaintiff*, | }<br>} |
| v. | } No. 3:20-cv-3<br>} |
| HEALY HOMES, LLC, | }<br>}<br>} |
| *Defendant*. | } |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff West Bend Mutual Insurance Company, by and through undersigned counsel of record, pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, hereby files its Complaint for Declaratory Judgment against Defendant Healy Homes, LLC, and states as follows:

### PARTIES AND BACKGROUND INFORMATION

1. This matter is a declaratory judgment action brought to determine whether Plaintiff West Bend Mutual Insurance Company owes a duty to defend and/or indemnify a claim against its insured, Defendant Healy Homes, LLC. The underlying claim and lawsuit arose out of a property damage complaint by landowners adjacent to a residential subdivision construction project of Defendant Healy Homes, LLC. The landowners complained that silt and stormwater runoff from the project site flowed onto their property due to the fault of Defendant Healy Homes, LLC. That flow damaged their land and contaminated the lake on their parcel.

2. Plaintiff West Bend Mutual Insurance Company ("West Bend") is a foreign corporation incorporated under the laws of State of Wisconsin with its principal place of business

in West Bend, Wisconsin. It is the insurance company that issued the policy of insurance at issue in this declaratory judgment action.

3. Defendant Healy Homes, LLC ("Healy Homes") is a Tennessee domestic limited liability company with its principal place of business in Knoxville, Knox County, Tennessee. It may be served with process via its registered agent, David Healy, at 11020 Kingston Pike, Suite 250, Knoxville, Tennessee 37934-2847. Healy Homes is the Named Insured on the relevant policy of insurance and the entity against whom a claim has been made by owners of real property for property damage to their land.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 2201-2202 as West Bend seeks a declaratory judgment and 28 U.S.C. § 1332 as complete diversity exists between the parties and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

*The Highlands at Hardin Valley*

6. Healy Homes is a Knoxville-based land development company. It develops plots of land into subdivision communities and builds houses on the subdivision lots for resale to potential homeowners.

7. Healy Homes sought to develop a residential subdivision on a 20-acre lot in the Hardin Valley area of Knox County, Tennessee. The location of this parcel is 2021 North Campbell Station Road, just south of Hardin Valley Road.

8. The land to be developed was owned by Ashwood Properties, LLC ("Ashwood Properties").

9. Healy Homes hired and utilized Ideal Engineering Solutions, Incorporated ("Ideal Engineering") to handle site surveying, site design, site development planning, and the civil engineering drawings for the development.

10. Healy Homes hired and utilized The Pipe Doctor, LLC ("Pipe Doctor") to handle earthwork and excavation when constructing the subdivision.

11. In early 2016, Healy Homes, through its agents and/or employees, submitted the design and site engineering drawings to the Knox County Planning Commission for review and to obtain approval for the project.

12. Design plans originally called for 52 lots in the subdivision on which a variety of housing styles could be constructed. The subdivision was to be called "The Highlands at Hardin Valley."

13. The development plot had substantial slope issues with approximately one-half of the site having slopes that equaled or exceeded a 15% grade. As a result, the Knox County Planning Commission required Healy Homes to submit a grading plan to be reviewed as part of the approval process for the subdivision plan.

14. The submitted grading plan showed extensive grading and earthwork would be required to build the subdivision roads and pads for home sites. The plan also showed a sediment basin on the north end of the parcel to control stormwater and other runoff from the project site.

15. The Knox County Planning Commission approved the plans and the development, subject to various conditions, in August 2016. The approved subdivision plan permitted 50 lots.

16. Upon information and belief, Healy Homes began constructing the subdivision soon after receiving approval for the project. The construction of the subdivision required substantial grading and earthwork as well as clearing of pre-existing vegetation.

17. Healy Homes, by and through its agents and/or employees, conducted extensive clearing and grubbing, grading, and earthwork throughout the construction process on its development parcel.

*Downstream Problems*

18. The subdivision development abutted real property to the north owned and occupied by Charles Holland and his wife, Shirley Holland (the "Hollands"). The street address for the Hollands' property and residence is 11520 Hardin Valley Road, Knoxville, Tennessee 37932.

19. The Hollands purchased their land in 1990 and have lived there ever since. After moving in, the Hollands constructed a lake on the property and stocked the lake with fish. The lake was used by the Hollands for recreational purposes.

20. The Hollands' property is situated at the base of the ridge on which The Highlands at Hardin Valley development was situated.

21. Upon information and belief, after construction began on The Highlands at Hardin Valley, the Hollands began observing flows of "water, mud, silt and debris" during rainfall events. These flows came downhill from the Healy Homes development site. These flows of "water, mud, silt and debris" ran onto the Hollands' property and into their lake, contaminating the lake and killing the fish.

22. Upon information and belief, the Hollands made numerous complaints to Knox County officials about the damage to their lake and their fish as well as to Healy Homes, and/or employees, contractors, or representatives of Healy Homes.

23. As an example, on April 7, 2017, Brad Warren, the Director of Construction Services for the Knox County Department of Engineering and Public Works, sent e-mail correspondence regarding the lack of compliance with the approved stormwater pollution prevention plan ("SWPPP") during the construction of The Highlands at Hardin Valley. A true and correct copy of this correspondence is attached to this Complaint and incorporated as if set forth herein verbatim as **Exhibit A**.

24. Warren sent the e-mail to Heath Haun of Pipe Doctor. David Healy of Healy Homes, among others, was copied on the e-mail. (*See* Ex. A.)

25. Warren advised that he had inspected the project site and observed locations where stormwater runoff was escaping the property under the silt fencing. (*See id.*)

26. The runoff that escaped had entered the right-of-way ditch and flowed into the Hollands' lake. (*See id.*)

27. Warren also discussed "excessive discharge" from the sediment basin outlet structure orifice. (*See id.*)

28. Warren requested corrections to those issues to get the construction project site into full compliance with the design plans. He also informed the e-mail's recipients that stream cleanup from the discharge had to be coordinated with the Tennessee Department of Environment and Conservation ("TDEC"). (*See id.*)

29. Warren concluded by stating Knox County was requiring that erosion prevention and sediment control ("EPSC") measures be maintained and installed in accordance with the approved SWPPP. (*See id.*)

30. Warren's email was in response to prior correspondence earlier that same day from Haun, with David Healy of Healy Homes again copied, addressing complaints from the Hollands

that silt and sediment runoff from the project site had flowed downhill into the Hollands' lake and killed their fish. (*See id*.)

31. Upon information and belief, both before and after April 7, 2017, Healy Homes, through its employees, agents, and/or contractors, had additional discussions, conversations, and/or communications related to the siltation and sediment runoff issues from the project site onto the Hollands' property and the claims of the Hollands that "debris, dirt, top soil, and other waste material" had flowed into and damaged the Hollands' pond and their fish.

32. Upon information and belief, both before and after April 7, 2017, Healy Homes, through its employees, agents, and/or contractors, was aware of the damages and losses claimed by the Hollands, or had sufficient knowledge that Healy Homes could be said to be on notice of those damages and loses, related to the siltation and sediment runoff from the project site and the damage to the Hollands' pond and the fish within.

*Healy Homes Applies for Insurance Coverage*

33. On May 22, 2018, while the issues regarding damage to the Hollands' lake and property were ongoing, Healy Homes submitted a Commercial Insurance Application to West Bend for potential insurance coverage (the "Application"). A true and correct copy of this Application is attached to this Complaint and incorporated as if set forth herein verbatim as **Exhibit B**.

34. Page 4 of the Application contains a section titled "Loss History." This section requested that Healy Homes advise West Bend of "*all claims or losses* (regardless of fault and whether or not insured) *or occurrences that may give rise to claims* for the last __ years." (*See* Ex. B (emphases added).)

35. Healy Homes, despite knowing of the Hollands' claim of damage to their lake and their fish, did not list that claim or any other such claims, losses, or occurrences. (*See id*.)

36. The Application, just prior to the signature block, stated:

> THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE INQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

(*See id*.)

37. The Application was signed by Ashley Healy on behalf of Healy Homes. (*See id*.)

38. West Bend relied upon the Application, and the information within the Application, to evaluate Healy Homes for potential insurance coverage, to determine if West Bend wished to offer and/or bind insurance coverage for Healy Homes, and to determine the appropriate premium for the Policy once coverage was bound.

39. Upon information and belief, prior to June 11, 2018, Healy Homes, through its agents, employees, and or contractors, knew the Hollands' lake, as well as the fish within the lake, had been damaged by runoff from the project site carrying "debris, dirt, top soil, and other waste material" into the Hollands' lake and that the Hollands claimed Healy Homes had caused that damage.

40. Upon information and belief, prior to June 11, 2018, Healy Homes, through its agents, employees, and or contractors, had sufficient knowledge of a claimed loss by the Hollands and subjective knowledge of the damages claimed by the Hollands such that Healy Homes was on notice of the claimed losses and damages to the Hollands' lake and fish within the lake.

41. West Bend relied on the information, or lack thereof, in the Application when determining to offer insurance coverage to Healy Homes.

42. Information related to the Hollands' claim of damage to their lake against Healy Homes was material to West Bend's determination to issue an insurance policy to Healy Homes. Had Healy Homes disclosed the ongoing loss and claimed damages by the Hollands, West Bend would have evaluated the request to bind insurance coverage differently, including the possibility of not issuing a policy of insurance, as well as the amount of the premium to be charged for the Policy.

*The West Bend Insurance Policy*

43. West Bend issued a Commercial Lines Package policy, policy # A4644587 00, effective from June 11, 2018, to June 11, 2019 (the "Policy"). The Named Insured was Healy Homes. A true and correct copy of this Policy is attached to this Complaint and incorporated as if set forth herein verbatim as **Exhibit C**.

44. The Policy contains a Commercial General Liability Coverage Part with a General Aggregate Limit and Products-Completed Operations Aggregate Limits of $2,000,000 each. (*See* Ex. C.)

45. The Commercial General Liability Coverage Form contains the following terms, conditions, exclusions and definitions:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

- **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

- **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

- **b.** This insurance applies to "bodily injury" and "property damage" only if:

  - **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  - **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  - **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

- **f. Pollution**

  - **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    - **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

\* \* \*

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

\* \* \*

**j. Damage To Property**

"Property damage" to:

\* \* \*

Complaint for Declaratory Judgment  Page 10 of 18
Case 3:20-cv-00003-DCLC-JEM   Document 1   Filed 01/03/20   Page 10 of 18
PageID #: 10

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \*

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

## SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    \* \* \*

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    \* \* \*

## SECTION V – DEFINITIONS

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

\* \* \*

17. "Property damage" means:

Complaint for Declaratory Judgment Page 11 of 18
Case 3:20-cv-00003-DCLC-JEM   Document 1   Filed 01/03/20   Page 11 of 18
PageID #: 11

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

\* \* \*

(*See id.*)

46. The Policy also contains a Plus Pak – Liability Endorsement (WB 2000 GL 01 18), which modifies the Commercial General Liability Coverage Part as follows:

    **A.** The following is added to **Paragraph 1. Insuring Agreement of Section I – Coverage A – Bodily Injury and Property Damage Liability:**

        **f.** Knowledge that "Bodily Injury" or "Property Damage" has occurred or knowledge of a claim or suit by an agent or employee of any insured shall not in itself constitute knowledge of the insured unless your partners, executive officers, directors, managers, members or a person, who has been designated by them to receive reports of occurrences, offenses, claims or suits shall have received such notice from the agent or employee.

(*Id.*)

*The Underlying Lawsuit*

47. On August 1, 2019, the Hollands filed a lawsuit against Healy Homes, Pipe Doctor, Ideal Engineering, and Ashwood Properties, styled as *Charles Holland, et al. v. Healy Homes, LLC, et al.*, Case No. 2-276-19, presently pending in the Circuit Court of Knox County, Tennessee. A true and correct copy of this lawsuit is attached to this Complaint and incorporated as if set forth herein verbatim as **Exhibit D**.

48. The Hollands allege they own real property at 11520 Hardin Valley Road, Knoxville, Tennessee 37932, and reside at that location. (Ex. D.)

49. The Hollands further allege they "constructed, at their own expense, a lake on the property which they used to recreate, including stocking the lake with fish." (*Id.* ¶ 7.)

50. The underlying lawsuit of the Hollands claims Healy Homes was a entity that was developing and constructing a residential subdivision called "The Highlands at Hardin Valley." (*See id.*)

51. The Hollands allege Healy Homes submitted the design drawings and site engineering drawings to the Knox County Commission to obtain approval for the project. The Knox County Commission approved the plans and the development on August 11, 2016. (*See id.*)

52. The Hollands allege The Highlands at Hardin Valley parcel was located "on top of a ridge above the [Hollands'] property" with slopes on that ridge "exceed[ing] 25% in several places." The Hollands' land is at "the base of the afore-mentioned ridge." (*Id.* ¶ 11.)

53. The underlying complaint states construction began in August 2016 and alleges as follows with respect to the performance of that work:

> 13. Beginning in August of 2016 and continuing to the present time, Defendants began moving significant amounts of earth to excavate the site project property. As a result of the movement of earth and clearing of vegetation, the natural flow of water from the property has altered its course and when substantial rains occur, water, mud, silt and debris from the site project property flows down the ridge into Plaintiffs' lake.

> 14. The flow of water, mud, silt and debris from the site project property into Plaintiffs' lake, which did not occur prior to the commencement of construction, has caused significant damage to Plaintiffs' lake rendering it unusable for the purposes for which it was originally constructed.
>
> 15. Plaintiffs have registered numerous complaints concerning the damage to their property with Knox County, but the problem continues unabated.

(*Id.* ¶¶ 13-15.)

54. The Hollands allege numerous causes of action against Healy Homes, as well as Pipe Doctor, Ideal Engineering, and Ashwood Properties. Those causes of action focus on various negligent actions in constructing and excavating the property. (*See id.*)

55. Specific to Healy Homes, the Hollands allege Healy Homes negligently failed to follow the construction and excavation plans, to control and monitor work done on the property, and negligently created a dangerous condition that allowed "debris, dirt, top soil, and other waste material" to follow downhill onto the Hollands' property and into their pond after every significant rainfall event. The Hollands also allege causes of action for nuisance and trespass against Healy Homes. (*See id.*)

56. The Hollands made further allegations related to the timing of their alleged property damage injuries and the involvement of Knox County officials in addressing problems related to siltation runoff from the project site:

> 31. Since August 2017, these instances have occurred during each significant rainfall up to and including a large rain that occurred on July 12, 2019. After many of these instances, the Plaintiffs filed reports with Knox County about the flooding issues. On at least one occasion, Defendants were advised that they were not in compliance with the requirements of the Knox County Code. It is unknown whether Defendants ever followed up with the inspections although it is clear that the problem has not been remedied as the trespass continued and continues.
>
> 32. From August 2017 and going forward to the present time, the Developing Defendants and Defendant Owners have, without the Plaintiffs' consent, maintained a site in conjunction with the unlawful fill and inadequate

drainage system designed by Defendant Ideal Engineering Solutions, which has caused the Plaintiffs to suffer substantial ongoing property damage.

(*See id.* ¶¶ 31-32.)

57. The Hollands seek damages in the amount of $1,500,000.00 against Healy Homes and the other defendants in the underlying case, plus additional costs, expenses, attorneys' fees, and interest. (*See id.*)

58. Healy Homes duly notified West Bend of the Hollands' lawsuit and demanded that West Bend defend and/or indemnify Healy Homes with respect to the underlying complaint filed by the Hollands.

59. West Bend provided a defense to Healy Homes subject to a full reservation of rights. West Bend specifically reserved its right to contest that the terms, conditions, exclusions, and endorsements in the Policy did not require West Bend to defend or indemnify Healy Homes in the underlying lawsuit brought by the Hollands. West Bend further specifically reserved its right to contest coverage based on the known loss and loss-in-progress doctrines, as well as a material misrepresentation in the Application. A copy of this Reservation of Rights letter is attached and incorporated as if set forth herein verbatim as **Exhibit E**.

## COUNT ONE
## DECLARATORY JUDGMENT

60. West Bend hereby adopts and incorporates by reference all prior paragraphs set forth in this Complaint as though set forth fully herein.

61. Based upon the foregoing, including all enclosed terms and conditions of the Policy, the rights and duties of West Bend with respect to Healy Homes, have been called into question, and an actual controversy exists on whether the underlying lawsuit requires West Bend to provide insurance coverage for the claim asserted in the form of a defense to the underlying

Complaint for Declaratory Judgment                                             Page 15 of 18
Case 3:20-cv-00003-DCLC-JEM   Document 1   Filed 01/03/20   Page 15 of 18
PageID #: 15

lawsuit and/or indemnification for any claims potentially covered, in whole or in part, under the Policy.

62. Based on the allegations raised in the tendered claim and the terms and conditions of the Policy, there exists a *bona fide* controversy between the parties with respect to the obligation of West Bend to afford coverage for the aforementioned claims and losses.

63. West Bend asserts that some, if not all, of the claims made by the Hollands against Healy Homes fall outside of the scope of coverage afforded by the terms, conditions, exclusions, definitions and endorsements in the Policy which would foreclose any further obligation or duty on the part of West Bend to defend and/or indemnify Healy Homes in the lawsuit brought by the Hollands, including, but not limited to, the pollution exclusion within the Policy.

64. West Bend seeks a declaration and judgment that it does not owe Healy Homes an obligation to a duty to defend and/or indemnify for all or certain causes of action raised in the underlying complaint of the Hollands for the following reasons:

    a.    Some, if not all, of the claims made by the Hollands against Healy Homes fall outside of the scope of coverage afforded by the terms, conditions, exclusions, definitions and endorsements in the Policy which would foreclose any further obligation or duty on the part of West Bend to defend and/or indemnify Healy Homes in the lawsuit brought by the Hollands, including, but not limited to, the pollution exclusion within the Policy.

    b.    Based on the knowledge of Healy Homes with respect to the asserted claim of loss by the Hollands prior to the policy period and/or applying for insurance coverage with West Bend, the known loss doctrine and/or loss-in-progress doctrine, to the extent applicable in the State of Tennessee, foreclose any further obligation or duty on the part of

Complaint for Declaratory Judgment     Page 16 of 18
Case 3:20-cv-00003-DCLC-JEM    Document 1   Filed 01/03/20   Page 16 of 18
PageID #: 16

West Bend to defend and/or indemnify Healy Homes in the lawsuit brought by the Hollands; and/or

c. The Policy is rescinded and/or voided *ab initio* as Healy Homes made material representations in its Application to West Bend and during the application process that were both false and material to scope of the risk West Bend was being asked to insure, including, but not limited to, the underlying litigation brought by the Hollands.

65. In addition, West Bend seeks reimbursement of costs, expenses, and attorney's fees with respect to bringing this cause of action.

**WHEREFORE, premises considered,** West Bend prays for the following relief:

1. That proper process issue to Defendant requiring an Answer to this Complaint for Declaratory Judgment within the time allowed by law;

2. That this Court grant West Bend a judgment pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 against Defendant and declare that the Policy does not cover the allegations and causes of action in the underlying lawsuit, thereby relieving West Bend of a duty to defend and/or indemnify Defendant with regard to the underlying cause of action;

3. That this Court grant West Bend a judgment pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 against Defendant and declare that the Policy is rescinded or voided *ab initio* due to material misrepresentations made by Defendant to West Bend in the Application;

4. An award of West Bend's costs, fees, expenses, and/or disbursements incurred in prosecuting this action;

5. Pre-judgment and post-judgment interest; and

Complaint for Declaratory Judgment                                                                 Page 17 of 18
Case 3:20-cv-00003-DCLC-JEM   Document 1   Filed 01/03/20   Page 17 of 18
PageID #: 17

6. Any further relief, in law or equity, to which West Bend may be entitled as determined by this Court pursuant to 28 U.S.C. § 2202.

Respectfully submitted,

LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC

By: **/s/ Brad A. Fraser**
Jeffrey E. Nicoson, No. 027445
(admission *pro hac vice* pending)
Brinkley Plaza, Suite 800
80 Monroe Avenue
Memphis, Tennessee 38103
Phone: (901) 527-0214
Fax: (901) 527-8224
jeff.nicoson@leitnerfirm.com

Brad A. Fraser, No. 020087
900 South Gay Street
Suite 1800 – Riverview Tower
Knoxville, Tennessee 37902
Phone: (865) 523-0404
Fax: (865) 673-0260
brad.fraser@leitnerfirm.com

*Counsel for Plaintiff West Bend Mutual Insurance Company*

Complaint for Declaratory Judgment                                    Page 18 of 18
Case 3:20-cv-00003-DCLC-JEM    Document 1    Filed 01/03/20    Page 18 of 18
PageID #: 18